The City of Huber Heights Board of Zoning Appeals ("BZA") appeals from a judgment of the Montgomery County Court of Common Pleas, which reversed a decision of the BZA to deny an occupancy permit to Beth Jacob Congregation ("Beth Jacob").
The facts and procedural history of the case are as follows.
In 1993, Children's Laboratory Schools, d.b.a. Gloria Dei Montessori School ("Gloria Dei"), filed an application with the BZA seeking a determination that its proposed use of property located at 6560 Brandt Pike as a bingo and reception hall was permissible for the B-2 commercial zoning district in which the property was located. At the time, the zoning code set forth a number of specific permitted uses of property in a B-2 commercial district, such as theatres, assembly halls, pool halls, and bowling alleys, and provided that other uses "of the same general character" should also be allowed. Bingo was not specifically enumerated, so Gloria Dei's request required the BZA to determine whether a bingo hall was "of the same general character" as the specifically enumerated B-2 uses. The BZA concluded that a bingo hall was not "of the same general character" and was not a permitted use of property in a B-2 district. This decision was ultimately reversed following a series of appeals. See Children'sLaboratory Schools, Inc. v. Huber Heights (Sept. 6, 1995), Montgomery App. No. 14756, unreported ("the Gloria Dei decision").
On September 13, 1993, while the appeal of the BZA's decision was pending, the Huber Heights City Council amended the zoning code as it related to B-2 commercial districts. As amended, the code permitted all of the previous specifically enumerated B-2 uses, but eliminated the provision that other uses "of the same general character" should be permitted as well. As a result, any new applications for a bingo hall in a B-2 commercial district would be denied. The amendment was not applicable to Gloria Dei, however, because its application had been filed prior to the amendment. Gibson v. Oberlin (1960), 171 Ohio St. 1, 5.
On April 26, 1996, Beth Jacob filed an application for an occupancy permit to use 6560 Brandt Pike, the property at issue in the Gloria Dei decision, as a "banquet hall/rental hall." A representative of Beth Jacob advised the zoning officer that the organization intended to operate a bingo hall on the premises. Huber Heights Law Director John Chambers advised the zoning department that, notwithstanding the Gloria Dei decision, the new zoning rules should apply to Beth Jacob because it was a new applicant. Understanding that Beth Jacob was a different entity from Gloria Dei, the zoning department denied its application for an occupancy permit. Beth Jacob appealed this decision to the BZA.
On July 10, 1996, the BZA considered Beth Jacob's application at a special meeting at which Beth Jacob was represented by its attorney, Theodore Gudorf. Gudorf was the only witness to testify on Beth Jacob's behalf, and there were no other witnesses. Gudorf stated that Gloria Dei had been acting as the agent for Beth Jacob in the previous action and that the same parties were involved in both zoning applications. Gudorf did not produce any documentary evidence in support of this assertion. Ultimately, the BZA treated Beth Jacob as a different applicant from Gloria Dei and denied its request for an occupancy permit.
Beth Jacob appealed to the Montgomery County Court of Common Pleas pursuant to R.C. 2506.03. It attached several documents to its briefs that had not been before the BZA. The BZA filed a motion to strike these documents, but the trial court did not rule on the motion. On June 3, 1997, the trial court reversed the decision of the BZA finding that, pursuant to the Gloria Dei
decision, the use of 6560 Brandt Pike as a bingo hall was "in existence" prior to the amendment of the B-2 commercial district zoning regulations and that bingo must be permitted there as a nonconforming use. The trial court stated as "fact" that Beth Jacob was a "lessee of the property in question."
The BZA appeals to this court and asserts three assignment of error.
 A. THE COURT OF COMMON PLEAS ERRED IN SUSTAINING APPELLEE'S OBJECTIONS TO APPELLANT'S DECISION BECAUSE THE USE OF THE PROPERTY FOR BINGO PURPOSES WAS NOT "IN EXISTENCE" AT THE TIME THE ZONING LEGISLATION WAS ENACTED AND THEREFORE, THE USE OF THE PROPERTY FOR BINGO PURPOSES IS NOT A PERMITTED NONCONFORMING USE WHICH RUNS TO SUBSEQUENT LESSEES OF THE PROPERTY.
The BZA claims that Beth Jacob was not entitled to an occupancy permit because bingo was not "in existence" on the premises when the zoning regulation for B-2 districts was amended. Therefore, the BZA claims, bingo does not qualify as a valid nonconforming use.
The lawful use of any dwelling, building, or structure and of any land or premises may not be made unlawful by the enactment or amendment of a zoning ordinance even if the use does not conform with the enacted or amended zoning provisions. R.C. 713.15. Such use may continue as a nonconforming use so long as certain conditions are satisfied. Id. An owner of property has no vested right to use a piece of property in a particular manner, however, unless such property was devoted to that use prior to the regulation thereof. Gibson, supra, at 5. The BZA relies on this principle in support of its claim that Beth Jacob's occupancy permit was properly denied, no bingo operation ever having been "in existence" at 6560 Brandt Pike prior to the amendment of the zoning regulations.
Although the BZA's statement of the law regarding nonconforming uses is generally correct, its argument ignores the fact that the reason bingo had not been an established use when the zoning regulation changed was that the BZA had improperly denied Gloria Dei's pre-amendment application to operate a bingo and reception hall as a permissible use. It is well settled that a municipality may not give retroactive effect to a zoning ordinance or amendment so as to deprive a property owner of his right to a zoning permit in accordance with ordinances in effect at the time of the application for such a permit. Gibson, supra, at 4, citing State ex rel. Fairmount Center Co. v. Arnold, (1941)138 Ohio St. 259. Given that limitation upon a municipality's power, a municipality should not be permitted to do indirectly what it may not do directly. In Gloria Dei, we held that the BZA had acted improperly in denying Gloria Dei's 1993 application to conduct bingo, a permitted use according to the zoning ordinances in effect at the time of the application, at 6560 Brandt Pike. The zoning regulations were changed while the appeal of the BZA's decision was pending. If we were to adopt the city's position that bingo may not be considered a valid, nonconforming use because no bingo operation had been "in existence" before the B-2 zoning regulation was amended, we would be allowing the city to benefit from its previous improper denial of Gloria Dei's application and, in effect, to apply the zoning amendment retroactively. We will not sanction such an interpretation of the law.
The first assignment of error is overruled.
 B. THE COURT OF COMMON PLEAS ERRED IN FAILING TO RULE ON APPELLANT'S MOTION TO STRIKE FILED WITH THE COURT ON APRIL 29, 1997, WHICH WAS MATERIAL TO THE COURT'S DECISION.
The BZA contends that the trial court erred in failing to rule on its motion to strike several documents attached to and statements made in Beth Jacob's reply brief because these documents and statements were extraneous to the transcript of proceedings before the BZA.
R.C. 2506.03 provides that the hearing of an appeal from an order of an administrative agency shall be confined to the transcript of proceedings filed pursuant to R.C. 2506.02 unless one of the enumerated exceptions applies. R.C. 2506.02 states that the complete transcript shall consist of all the original papers, testimony, and evidence offered, heard, and taken into consideration by the agency in issuing the order from which the appeal is taken. Because none of the exceptions set forth in R.C.2506.03 applied in this case, the trial court was required to confine its review of the BZA's decision to the evidence contained in the transcript of proceedings.
The BZA filed a motion to strike several documents attached to Beth Jacob's reply brief. One of the documents was an undated affidavit from Victor Jacob, Vice President of Beth Jacob, stating that Beth Jacob "had entered into a lease agreement with the owner of the property and had an agreement with Gloria Dei for use of the premises" when Gloria Dei filed its application with the BZA. No lease agreement was attached to the affidavit. The other documents were an application for an occupancy permit filed in the name of Gloria Dei in January 1997 and a subsequent letter from Chambers regarding the merits of that application. Obviously, neither of these documents existed at the time of the BZA's decision on Beth Jacob's application. The BZA's motion also objected to statements in Beth Jacob's reply brief related to matters which were not of record before the BZA. Because the presentation of additional evidence in the court of common pleas was clearly precluded by R.C. 2506.03 in this case, the BZA's motion to strike the materials contained in Beth Jacob's reply brief should have been granted.[1]
Although the trial court did not expressly rely on any of the additional evidence offered by Beth Jacob, its decision did not address the issue on which the BZA had based its denial of the occupancy permit: its doubt about the nature of the relationship between Beth Jacob and Gloria Dei. Rather, the trial court addressed an owner's right to maintain a nonconforming use of real property when a new zoning regulation is enacted and simply stated as fact that Beth Jacob was a lessee of the property. Thus, the trial court seems to have presumed that the principals in the Beth Jacob case were the same principals in the Gloria Dei case and to have resolved any uncertainty about the relationship between the two in Beth Jacob's favor. Because this relationship was the precise issue to which the additional evidence offered by Beth Jacob was addressed, we cannot presume that the trial court's failure to strike this evidence was harmless.
The second assignment of error is sustained.
 C. THE COURT OF COMMON PLEAS ERRED IN SUSTAINING APPELLEE'S OBJECTIONS TO APPELLANT'S DECISION BECAUSE (1) APPELLEE IS A DISTINCT ENTITY FROM A PREVIOUS PERMIT APPLICANT; AND (2) APPELLEE'S APPLICATION FOR A PERMIT WAS NOT FILED WITH THE HUBER HEIGHTS ZONING DEPARTMENT UNTIL AFTER THE ENACTMENT OF PROHIBITORY ZONING AMENDMENTS.
The BZA argues that the trial court erred in reversing the BZA's denial of an occupancy permit to Beth Jacob because Beth Jacob was a distinct entity from previous applicant Gloria Dei and did "not enjoy the same interest as Gloria Dei" in the previous litigation regarding the use of the disputed property. The BZA contends that the new zoning regulations, which had gone into effect before Beth Jacob's application, required the denial of the requested occupancy permit.
If, in 1993, the BZA had granted Gloria Dei's application to use 6560 Brandt Pike as a bingo and reception hall, as it ought to have done, and if Gloria Dei had actually established such an operation, bingo would have constituted a permitted use of the premises pursuant to the B-2 zoning regulations in effect at that time. As discussed supra, Gloria Dei would then have had a vested interest in the use of the property for bingo. Having established a lawful, permitted use under the prior regulations, Gloria Dei would have been permitted to continue that use of the property as a nonconforming use notwithstanding subsequent changes in the zoning regulations. See, generally, Rohan, Zoning and Land Use Controls (1997), Section 41.01[1].
A change in the ownership or tenancy of a nonconforming business or structure generally does not affect the right to continue the nonconforming use because the right attaches to the land itself. Young, American Law of Zoning (1996), Section 6.40; Rohan, supra, Section 41.01[5]. As such, and because the Huber Heights Zoning Code does not specifically provide for the forfeiture of a nonconforming use in the event of a change in ownership or tenancy, Beth Jacob may have been entitled to stand in the shoes of Gloria Dei following the previous litigation if, in fact, it had established that a lessee-sublessee relationship existed between Beth Jacob and Gloria Dei.
Having stated as fact that Beth Jacobs was a lessee of the property, the trial court concluded that the nature of the relationship between Gloria Dei and Beth Jacob entitled Beth Jacob to the benefit of the prior litigation. As we discussed supra, however, the trial court's conclusion may have been based in part upon evidence that was not properly before the court. Uncertainty about the relationship between Gloria Dei and Beth Jacob was central to the BZA's denial of Beth Jacob's request for an occupancy permit. That being the case, we will examine the reasonableness of the BZA's denial of Beth Jacob's occupancy permit de novo, confining ourselves, as the trial court should have, to the evidence presented to the BZA. The BZA members present at the hearing were Lu Dale, John Howlett, Ted Whited, and William Singer. Law Director Chambers was also present.
The following evidence, consisting solely of Gudorf's testimony, was presented at the hearing on Beth Jacob's application for an occupancy permit. Gudorf represented to the BZA that Beth Jacob "is the same party" as Gloria Dei and was entitled to the relief afforded by the Gloria Dei decision. Specifically, Gudorf claimed that the relationship between Beth Jacob and Gloria Dei was that of lessee/sublessee. No documentary evidence was submitted in support of this assertion.
Chambers stated that Children's Montessori School was the name of the party in the previous litigation over the permissibility of bingo at 6560 Brandt Pike and that this name did not appear on Beth Jacob's application for an occupancy permit. Chambers stated that, to his knowledge, Beth Jacob had not been involved in the previous suit and that he would like to see some written evidence of the alleged relationship between Beth Jacob and Gloria Dei. Chambers acknowledged that a party wrongfully denied a permit, such as Gloria Dei, must be allowed to obtain that permit notwithstanding subsequent zoning changes, citingGibson, supra, but stated that new applications must be addressed pursuant to existing zoning regulations. Chambers indicated that the applicant's name not being the same was "certainly a major issue in his estimation." BZA member Howlett also noted that Beth Jacob's application listed a different owner's name than he recalled from Gloria Dei's application. Gudorf provided an explanation for this change, again indicating that the parties involved were still the same, but provided no documentation of his explanation. Gudorf stated, "[I]t may not have been stated [on the application], but I am explaining who the parties are, that is, in essence it is the same players involved."
BZA member Dale pointed out that "[t]here may be a lot of people out there that are involved but [the BZA is] dealing with who is on paper before us. * * * [S]ome of the things that you're saying and I guess it seems that you know them, but we don't and we don't have it in writing * * *." After questioning Gudorf, Howlett pointed out that Beth Jacob and Gloria Dei are two, "completely separate" non-profit corporations. Chambers also noted that the fact that some of the same principals may have been involved in an organization doesn't "mean necessarily that it's the same." Gudorf reiterated that it was his understanding that the same relationship between the parties existed as had at the time of the Gloria Dei application.
The BZA debated postponing a decision on Beth Jacob's application in order to give Beth Jacob time to refile its application in the name of Gloria Dei, and Gudorf indicated that it would be fine with Beth Jacob if the permit was issued in the name of Gloria Dei. Some BZA members thought that Beth Jacob's refiling of the application in the name of Gloria Dei would be the simplest solution to the dilemma. Others questioned why Beth Jacob had not already refiled its application in the name of Gloria Dei when it realized that the use of a different name might be troublesome. After its deliberations, the BZA concluded that it was difficult to determine who was involved and who was not, that the BZA should deny the current application, and that the matter could be simply resolved by refiling the application in the name of Gloria Dei if, in fact, the parties bore the same relationship as they had at the time of the previous application.
In reversing the decision of the BZA, the trial court did not address the issues central to the BZA's determination: the discrepancy in the names on the applications and the precise nature of the relationship between the named applicants. We have no quarrel with the trial court's conclusion that Gloria Dei's use of the property as a bingo hall was unaffected by the change in zoning regulations enacted subsequent to its application or to its conclusion that any vested right Gloria Dei had in operating a bingo hall at 6560 Brandt Pike was transferable to its lessee. The disputed issue, however, was whether Beth Jacob had demonstrated that it was entitled to the same rights as Gloria Dei. Our decision in Gloria Dei did not entitle anyone to operate a bingo hall at 6560 Brandt Pike; it entitled Gloria Dei to do so. Other applicants were bound by the zoning regulations, as amended, at the time of their applications.
Based on the transcript of proceedings before the BZA, we conclude that the BZA's decision was supported by the preponderance of substantial, reliable, and probative evidence. Beth Jacob's application made no reference to a relationship with Gloria Dei, and the nature of that relationship remained unclear at the hearing. The BZA was not required to accept Gudorf's "understanding" that Gloria Dei was a sublessee of Beth Jacob or his unsupported assertion that "the parties are the same" where Beth Jacob had presented no documentary evidence in support of this claim. The BZA apparently believed that the issue could be easily resolved by the refiling of an application in the name of Gloria Dei if the relationship between Beth Jacob and Gloria Dei was as Beth Jacob claimed, and it expressed some consternation that Beth Jacob had perfected an appeal instead of refiling the application. Although the additional materials filed by Beth Jacob in the trial court lend support to its claimed relationship with Gloria Dei, Beth Jacob was not entitled to present additional evidence in the trial court, as discussed supra. Based on the information presented to the BZA, the application was reasonably rejected. Thus, the trial court erred in reversing the BZA's decision.
The third assignment of error is sustained.
The judgment of the trial court will be reversed.
BROGAN, J. and FAIN, J., concur.
Copies mailed to:
Theodore G. Gudorf
Thomas M. Hanna
John C. Chambers
Hon. Barbara P. Gorman
[1] We note that Beth Jacob also attached an undated lease between R.G. Real Estate Holding, Inc. and Beth Jacob for property located at 6580 Brandt Pike to its initial brief in the trial court. The lease makes no reference to Gloria Dei and specifies a different Brandt Pike address than the one at issue here. Although the BZA did not specifically object to the introduction of this document in its motion to strike, we note that the document, like the ones discussed above, was extraneous to the transcript of proceedings.